UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

IN RE SEPTEMBER 11 PROPERTY DAMAGE          :        21 MC 101
AND BUSINESS LOSS LITIGATION                :

------------------------------------------------------------------------ x

AEGIS INSURANCE SERVICES, INC.; LIBERTY      :
INSURANCE UNDERWRITERS, INC.; NATIONAL       :        **OPINION AND ORDER**
UNION INSURANCE COMPANY OF PITTSBURGH;       :        **GRANTING THIRD-**
NUCLEAR ELECTRIC INSURANCE LIMITED;          :        **PARTY DEFENDANTS'**
CERTAIN UNDERWRITERS AT LLOYDS,              :        **MOTIONS TO DISMISS**
(SYNDICATES 1225 AND 1511); a/s/o CONSOLIDATED :
EDISON COMPANY OF NEW YORK, INC.,            :
                                             :        04 Civ. 7272 (AKH)
                              Plaintiffs,     :
        -against-                            :
                                             :
SEVEN WORLD TRADE CENTER COMPANY L.P.;       :
SILVERSTEIN PROPERTIES, INC.; CITIGROUP, INC.; :
CITIGROUP GLOBAL MARKETS HOLDINGS, INC.;     :
SALOMON SMITH BARNEY HOLDINGS, INC.;         :
SALOMON, INC.; SWANKE HAYDEN CONNELL         :
ARCHITECTS; AMBASSADOR CONSTRUCTION CO.,     :
INC.; CONSENTINI ASSOCIATES, INC.; CANTOR    :
SEINUK GROUP, P.C.; FLACK & KURTZ, INC;      :
SKIDMORE OWINGS & MERRILL, LLP; OFFICE OF    :
IRWIN G. CANTOR, P.C.; SYSKA & HENNESSY, INC.; :
AMEC CONSTRUCTION MANAGEMENT, INC.;          :
CENTRIFUGAL ASSOCIATES, INC.; DIC/UNDERHILL, :
A JOINT VENTURE; H.O. PENN MACHINERY CO.,    :
INC.; KABACK ENTERPRISES; PREFERRED UTILITIES :
MANUFACTURING CORP.; ELECTRIC POWER          :
SYSTEMS, INC.; AMERICAN POWER TECHNOLOGIES, :
INC.; G.C. ENGINEERING & ASSOCIATES, P.C.;   :
TISHMAN CONSTRUCTION CORPORATION;            :
FIRECOM INC.; GRACE CONSTRUCTION PRODUCTS;   :
FIBERLOCK TECHNOLOGIES, INC.; ROSENWACH      :
TANK CO., INC.; ALL FIRE SYSTEMS, INC.; EMERY :
ROTH & SON, P.C.; ABCO PEERLESS SPRINKLER    :
CORPORATION; AMR CORPORATION; AMERICAN       :
AIRLINES, INC.; UAL CORPORATION; UNITED      :
AIRLINES, INC.; COLGAN AIR, INC.; U.S. AIRWAYS :
GROUP, INC.; US AIRWAYS, INC.; HUNTLEIGH USA :
CORPORATION; ICTS INTERNATIONAL V; GLOBE     :
AVIATION SERVICES CORPORATION; BURNS         :
INTERNATIONAL SECURITY SERVICES              :

CORPORATION; PINKERTON'S INC.; SECURITAS AB;  :
and BOEING CO.,                                :
                                               :
                              Defendants.       :
------------------------------------------------------------------------- x
SEVEN WORLD TRADE COMPANY, L.P. and            :
SILVERSTEIN PROPERTIES, INC.,                   :
                                               :
                              Third-Party Plaintiffs,   :
                                               :
               -against-                        :
                                               :
SWANKE HAYDEN CONNELL ARCHITECTS;              :
AMBASSADOR CONSTRUCTION CO., INC.;              :
CONSENTINI ASSOCIATES, INC.; CANTOR            :
SEINUK GROUP, P.C.; FLACK & KURTZ, INC;        :
SKIDMORE OWINGS & MERRILL, LLP; OFFICE         :
OF IRWIN G. CANTOR, P.C.; SYSKA &              :
HENNESSY, INC.; AMEC CONSTRUCTION              :
MANAGEMENT, INC.; and CENTRIFUGAL              :
ASSOCIATES, INC.,                               :
                                               :
                              Third-Party Defendants,   :
------------------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

   I discuss in this decision the legal sufficiency of a third-party action filed by

Seven World Trade Company, L.P. and Silverstein Properties, Inc. (together, "Silverstein").

Silverstein was the owner of the leasehold to, and the developer of, a 47-story office tower that

was destroyed by fire and debris following the terrorist-related aircraft crashes of September 11,

2001.  As a result of the events of that day, Silverstein became both a plaintiff and a defendant,

suing to recover damages for loss he suffered, and defending against suits alleging that his

negligence caused the losses that others suffered.  I discuss here Silverstein's third-party action,

by which he seeks indemnification and contribution to the extent he is held liable in lawsuits

against him.

The background is recounted in two earlier decisions: <u>Aegis Ins. Serv. v. Port Auth.</u>, No. 21 MC 101, 04 Civ. 7272, __ F. Supp. 2d __, 2006 WL 62019 (S.D.N.Y. Jan. 12, 2006) ("<u>Aegis</u>"); and <u>Indus. Risk Ins. v. Port Auth. of N.Y. & N.J.</u>, 387 F. Supp. 2d 299 (S.D.N.Y. Jan. 26, 2005) ("<u>IRI</u>").  In short summary, Silverstein purchased a long term leasehold interest in the land and air space of Seven World Trade Center ("7WTC") in 1980.  Beneath and next to his property, Consolidated Edison Company of New York, Inc. ("ConEdison"), pursuant to agreements made with the Port Authority in 1968, built and maintained a power substation serving the entire World Trade Center complex then proposed to be developed.  When, in 1987 and 1988, Silverstein developed and leased the 47-story office tower that became Building Seven, ConEdison serviced that building as well.

In 1988, Silverstein leased portions of floors one through five, and floors 28 through 47 of 7WTC to Salomon Inc., a predecessor of defendant Citigroup Inc. and Citigroup Global Market Holdings Inc. (together, "Citigroup").  In 1998, Silverstein leased portions of the basement and the seventh floor, and the 23rd floor to New York City's Office of Emergency Management ("OEM").  Both leases authorized the respective tenants to design and build emergency generator and fuel supply systems, to enable them to have independent sources of energy.  Salomon negotiated for that right in order to maintain a trading floor capable of operating without power interruptions 24 hours per day, seven days per week.  OEM negotiated for that right in order to maintain an emergency command center capable of communicating within and without the City at all and any time of the day, night, or week.  A key purpose in both leases was to design and build an independent source of emergency power to function if regular sources of power supply were contracted or cut.  As a result, Salomon (and Citigroup, its successor) and the OEM maintained large stocks of diesel fuel in the lower floors of the building

which, allegedly, "intensified the fires that engulfed building number seven and made them impossible to extinguish." IRI, 387 F. Supp. 2d at 302.

The collapse of 7WTC caused substantial loss to Silverstein. Industrial Risk Insurers ("IRI") paid his claim, became subrogated to his rights, and sued Citigroup, among others, for causing the loss, alleging that Citigroup was negligent for maintaining large stocks of diesel fuel in 7WTC. I granted Citigroup's motion to dismiss, holding that, pursuant to the lease agreement between Silverstein and Citigroup, Silverstein had assumed the risks posed by Citigroup's backup generator system and related fuel tanks, barring IRI's suit. See id. at 308–10.

The collapse of 7WTC also destroyed the ConEdison substation and valuable transformers and other equipment that had been housed in the substation. Aegis Insurance Services, Inc. and other insurers paid the loss, became subrogated to ConEdison's rights, and filed suit against the Port Authority (the owner of the property), Silverstein (the owner and manager of the leasehold), and those who designed, built, maintained, and used the large stocks of diesel fuel and the emergency generator system that allegedly caused the fires to become uncontrollable—Citigroup, the City, and the contractors, engineers and architects who designed and built the system for Citigroup and the City. I held in Aegis, supra, (a) that the City of New York was entitled to immunity under the New York State Defense Emergency Act ("SDEA"), N.Y. Unconsol. Law § 9101 et seq. (McKinney 2006), that no triable issues were presented and summary judgment could be granted, and I dismissed the claims against it; (b) that the case was not ripe for decision with respect to the claims against the Port Authority, and I denied the Port Authority's motion to dismiss the complaint against it; (c) that a legally sufficient claim had been stated against Citigroup, and I denied its motion to dismiss the complaint against it (with one exception not here relevant); (d) that a legally sufficient claim had been stated against

Silverstein, and I denied his motion to dismiss the complaint against him; and (e) that the architects and contractors who were engaged by the City and Citigroup to design and build their respective backup generator systems did not owe a duty of care to ConEdison, and I granted their motions to dismiss the complaint against them.

Following my holding in Aegis that ConEdison's subrogated insurer had stated a legally sufficient claim against Silverstein, Silverstein amended his answer to assert third-party claims for indemnification and contribution against parties that had been dismissed in the lawsuit. Silverstein alleged that the several design and construction defendants—Swanke Hayden Connell Architects; Ambassador Construction Co.; Consentini Associates, Inc.; and the Cantor-Seinuk Group, which were engaged by the City (collectively, the "OEM Design and Construction Defendants"), and AMEC Construction Management, Inc., f/k/a Morse/Diesel International, Inc. ("AMEC"); Centrifugal Associates, Inc. ("Centrifugal"); Flack & Kurtz, Inc. ("Flack & Kurtz"); Skidmore, Owings, & Merrill, LLP ("Skidmore"); and the Office of Irwin G. Cantor, P.C. ("Irwin Cantor") which were engaged by Citigroup (collectively, the "Citigroup Design and Construction Defendants")—were negligent and otherwise at fault, and thus owed a duty to indemnify and contribute to any judgment that Silverstein might suffer. See Amended Answer ¶¶ 269–77. Silverstein also asserted third-party claims against Irwin Cantor and Syska & Hennessy, Inc. ("Syska"), contractors which provided engineering services for the construction of the 7WTC tower directly to Silverstein. See Third-Party Complaint ¶¶ 12–13. All third-party defendants now move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the third-party claims against them.

The motions to dismiss are granted. As I discuss below, the OEM Design and Construction Defendants are entitled to the same grant of immunity under the SDEA as is the

City, and the third-party complaint fails to allege any basis of liability beyond having designed

and built the emergency generator system that the City engaged them to design and build.  Also,

as I discuss below, the Citigroup Design and Construction Defendants cannot be sued by

Silverstein for designing and building the backup generator system that Silverstein had

authorized Citigroup's predecessor to design and build, and the third-party complaint alleges no

basis of liability that defeats that authorization.  And, as I discuss below, the third-party

complaint fails to meet the heightened pleading standard that applies to suits against licensed

design professionals under N.Y. C.P.L.R. § 3211(h).

## Discussion

**I.      Standard of Review**

    A.   Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion requires the court to determine whether a plaintiff has

stated a legally sufficient claim.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule

12(b)(6) may be granted only if "it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41,

45–46 (1957); Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991).  The court's function is "not

to assay the weight of the evidence which might be offered in support" of the complaint, but

"merely to assess the legal feasibility" of the complaint.  Geisler v. Petrocelli, 616 F.2d 636, 639

(2d Cir. 1980).  In evaluating whether a plaintiff may ultimately prevail, the court must take the

facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff.

See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699–700 (2d Cir. 1994).

    B.   Affirmative Defense Raised on Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A valid affirmative defense defeats even a well-pleaded complaint.  Every

defense, including an affirmative defense, to a claim for relief in any pleading, whether a claim,

counterclaim, cross-claim or third-party claim, must be asserted in the responsive pleadings thereto, if one is required, or by motion.  Fed. R. Civ. P. 12(b).  An "affirmative defense is normally asserted in an answer," but it may be raised on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) where "the complaint itself establish[es] the circumstances required as a predicate to a finding" that the affirmative defense applies.  McKenna v. Wright, 386 F.3d 432, 435 (2d Cir. 2004).  Affirmative defenses also may be sustained where "all relevant facts are shown by the court's own records, of which the court takes notice."  Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992); see also Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 87 (2d Cir. 2000).  Defendants have the burden to plead the affirmative defense, by answer or by motion; the plaintiff is not required to allege facts to negate the affirmative defense.  See Gomez v. Toledo, 446 U.S. 635, 640–41 (1980).

## II.      The Third-Party Complaint Against the OEM Design and Construction Defendants

The City of New York engaged the OEM Design and Construction Defendants to design and construct a backup generator system for 7WTC.  The system was to have a self-contained fuel supply for a command center that could continue to function and communicate, within the City and with state and federal governments, independently of traditional power sources and independently, therefore, of power outages.  In Aegis, the subrogated insurers of ConEdison claimed that the City and its contractors were negligent and otherwise at fault in siting diesel fuel tanks within a high-rise office tower.  After discovery, the City moved to dismiss the complaint on the ground that it was immune from liability under the SDEA, and the OEM Design and Construction Defendants moved to dismiss for lack of a duty owed to ConEdison.  I granted their motions, and this third-party action ensued.  The OEM Design and Construction Defendants now assert immunity under the SDEA.

The SDEA was enacted to prepare and respond to attacks on our State and country.  See SDEA § 9102 ("there exists a serious danger [of] enemy attack").  One of the purposes of the SDEA is to "permit the fullest participation by the people of [New York] in the defense effort." Id.  Indeed, the objectives of the SDEA "can be achieved only by a cooperative effort which mobilizes the resources of individuals, business, labor, agriculture and other private groups and government at every level."  SDEA § 9102-a.  As such, businesses and private groups have a civic responsibility to mobilize their resources in cooperation with government agencies to protect the State's population against attack.  See Daly v. Port Authority, 793 N.Y.S.2d 712, 719 (N.Y. Sup. Ct. 2005) (holding private corporations entitled to immunity under SDEA for "essential debris clearance" performed after terrorist attacks of September 11, 2001).  Consistent with the objectives stated in §§ 9102 and 9102-a, the SDEA provides that "any individual, partnership, corporation, association, trustee, receiver or any agents thereof, in good faith carrying out, complying with, or attempting to comply with any rule, regulation, or order … relating to civil defense … shall not be liable for any … damage to property as the result thereof."  SDEA § 9193.

The third-party complaint, together with my decision in Aegis, supply each of the facts needed to establish an affirmative defense of immunity under the SDEA.  The City engaged the OEM Design and Construction Defendants to "carry out" Mayor Giuliani's executive order to establish and operate an emergency command system.  See Aegis, __ F. Supp. 2d __, 2006 WL 62019 at *4–7 (citing Executive Order No. 30 (Mar. 19, 1996)).  The "creation of the OEM command center and its backup generator system qualifies as a civil defense measure, namely, the 'construction or preparation of … control centers,' under the [SDEA]." Id. at *6 (quoting SDEA § 9103(5)).  And the City carried out the executive order in "good faith." Id. at *7–8.

The allegations of the third-party complaint incorporate the very same allegations that were made in the complaint against the City of New York.  See Amended Answer of 7 World Trade Company, L.P. and Silverstein with Cross Claims and Third Party Claims ¶ 275 (incorporating "each of the allegations made by plaintiffs in their Amended Complaint concerning the OEM Tanks and the allegedly negligent design, construction and/or maintenance of same").  Since the OEM Design and Construction Defendants are not alleged to have done, or not done, anything other than what the City did or did not do, it is clear from the face of the pleadings that these Defendants are entitled to the same immunity under the SDEA as the City enjoys.  Cf. Boyle v. United Techs. Corp., 487 U.S. 500 (1988) (helicopter manufacturer who builds to federal specifications enjoys immunity of federal government).  Accordingly, the third-party complaint against the OEM Design and Construction Defendants is dismissed.

The claims in this case are far different from the claims of respiratory injury allegedly suffered by debris removal workers at the World Trade Center site.  There, the City's immunity depends on whether and to what extent it exercised proper direction and supervision of the work site, and of the prime contractors and subcontractors who were engaged by the City's Department of Design and Construction to perform the debris removal services, in relation to duties of care owed to the workers.  I held, in the context of a motion for judgment on the pleadings, requiring that I accept the truth of all allegations of the complaint, that the application and scope of the SDEA (and like measures) were too fact-intensive to be decided without a proper record.  See In re World Trade Ctr. Disaster Site Litig., 456 F. Supp. 2d 520, 554–56 (S.D.N.Y. Oct. 17, 2006).[1]

---

[1] Defendants asserted that they had a right to an immediate appeal of this decision and filed a notice of appeal.  They further contended that their notice of appeal divested this Court of jurisdiction to conduct further proceedings.  On January 8, 2007, I issued an opinion and order rejecting Defendants' contentions and asserting continuing jurisdiction.  See In re World Trade Ctr. Disaster Site Litig., No. 21 MC 100, __ F. Supp. 2d __, 2007 WL 60417

In contrast, my decision in <u>Aegis</u> was made in the context of a full record.  The subrogated plaintiffs had alleged that the City was negligent in designing and constructing a command and control center, with an emergency generator system and attendant diesel fuel tanks, within a multi-tower office building.  A sufficient record had been developed through ample discovery of the City's reasons for choosing the site, and concerning the design and construction of the command center at the site, for me to determine that the City had acted in "good faith" and within the purposes of the SDEA, and that there were no triable facts at issue, and I therefore dismissed the claims against it.

### III.  The Third-Party Complaint Against the Citigroup Design and Construction Defendants

Silverstein's third-party complaint against the Citigroup Design and Construction Defendants—AMEC, Centrifugal, Skidmore, Flack & Kurtz, and Irwin Cantor—alleges that these Defendants' negligent design and construction of Citigroup's backup generator and diesel fuel system proximately caused the destruction of 7WTC, and that the Citigroup Design and Construction Defendants therefore should be held liable to Silverstein in the event that Silverstein is held liable to ConEdison.  The Citigroup Design and Construction Defendants now move to dismiss the third-party complaint, arguing that, having been engaged by Citigroup, they owed no duty of care to Silverstein, and that, since they are being sued for doing that which Citigroup was permitted to do under the Silverstein-Citigroup lease agreement, Silverstein is barred from suing them to the same extent as I held that Silverstein's subrogated insurer, IRI, was barred from suing Citigroup.

---

(S.D.N.Y. 2007).  On January 17, 2007, Defendants filed a petition for writ of mandamus; a motion for emergency stay, and a motion for expedited appeal in the United States Court of Appeals for the Second Circuit.  The emergency stay was granted pending the hearing, and the motions remain pending.

For the reasons discussed below, I grant the Citigroup Design and Construction Defendants' motions to dismiss the third-party complaint.

A.  <u>The Citigroup Design and Construction Defendants Did Not Owe a Duty of Care to Silverstein</u>

Those who perform work, or deliver services or products, pursuant to a contractual or other commercial relationship, owe duties of care and proper performance to those who engage them and are entitled to their work, services, or products.  <u>See</u> <u>Ultramares Corp. v. Touche</u>, 255 N.Y. 170 (N.Y. 1931).  In order to state a claim for negligent design and construction, the plaintiff must allege that his relationship with the defendant was based on a contract between them that the defendant breached, or that the "bond between them [was] so close as to be the functional equivalent of contractual privity."  <u>See</u> <u>Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson</u>, 73 N.Y.2d 417, 419 (N.Y. 1989); <u>City Sch. Dist. v. Hugh Stubbins & Assocs.</u>, 85 N.Y.2d 535, 539 (N.Y. 1995); <u>Port Auth. of N.Y. & N.J. v. Rachel Bridge Corp.</u>, 192 A.D.2d 489, 490 (N.Y. App. Div. 1st Dept. 1993).  An allegation that the defendant participated in the design, construction, or supervision of construction is not enough to give rise to a duty of care; instead, the plaintiff must show that the functional equivalent of privity of contract arose between plaintiff and defendant as a result of the defendant's actions. <u>Aegis</u>, __ F. Supp. 2d __, 2006 WL 62019 at *22 (quoting <u>Melnick v. Parlato</u>, 296 A.D.2d 443 (N.Y. App. Div. 2d Dept. 2002)) (quotations and brackets omitted).

<u>Ossining Union</u> sets out three criteria which must be satisfied in order to find that one not in privity nevertheless enjoys the functional equivalent of privity: 1) the defendant must be aware that its work would be for plaintiff's particular purpose or purposes; 2) the plaintiff must rely on defendant's work in furtherance of that purpose; and 3) the defendant must engage in some conduct linking it to the plaintiff and evincing its awareness of plaintiff's reliance.

Ossining, 73 N.Y.2d at 425 (citing Credit Alliance Corp. v. Andersen & Co., 65 N.Y.2d 536, 551 (N.Y. 1985)).  Silverstein alleges that the purpose of performance by the Citigroup Design and Construction Defendants was "constructing and/or improving the 7 World Trade Center building."  Third-Party Complaint ¶ 15.  Silverstein's allegation, however, confuses the locale of performance with the purpose of performance.  The purpose of the Citigroup Design and Construction Defendants' performance, as provided in the Silverstein-Citigroup lease agreement, was to design and build an emergency generator and diesel fuel supply system for Citigroup, not for Silverstein.  The right to design and build such a system was demanded by Citigroup, as a condition of entering into a lease for 24 of the 47 floors of 7WTC; it was not a condition demanded by Silverstein.  See IRI, 387 F. Supp. 2d at 303–04.  Silverstein's right to review the plans and to assure that Citigroup's proposed alteration would not "jeopardize the structural integrity of the Building," did not transform Citigroup's need into Silverstein's purpose.  Indeed, Citigroup was required to reimburse Silverstein for the costs of his experts' reviews.  Id. Clearly, the Citigroup Design and Construction Defendants were not engaged for the "very end and aim" of providing improvements for Silverstein.  Glanzer v. Shepard, 233 N.Y. 236 (N.Y. 1922).  Silverstein's interest was to avoid "jeopardiz[ing]" his building, not improving his building.

   B.  IRI Establishes that Silverstein Assumed the Risks of the Citigroup Emergency
       Generator System

           I ruled in IRI, based on the lease agreement between Salomon (Citigroup's predecessor) and Silverstein, that "Silverstein knew about and accepted the risks posed by Citigroup's emergency generator and diesel fuel system" and therefore "assumed the risks presented by that system."  Id. at 308.  Silverstein retained the right to have its experts review the system, at Citigroup's expense, and to disapprove the system if it jeopardized the structural

integrity of the building.  Id. at 309.  By the lease agreement, Silverstein thus consented that no

duty ran from Citigroup to Silverstein in relation to the risks presented by the Citigroup

emergency backup system that Silverstein expressly had authorized.  See id. at 310

("Silverstein's assumption of risk amounted to a principle of no duty …..").  Accordingly, its

subrogated insurer's suit was barred.  See id.

        The same findings and rulings pertain to Silverstein's third-party suit against the

Citigroup Design and Construction Defendants.  These Defendants designed and constructed that

which Silverstein's lease with Citigroup permitted, and that which Silverstein's experts reviewed

and approved.  Thus for the same reasons that Silverstein accepted that no duty ran from

Citigroup to Silverstein, he accepted as well that no duty ran from those whom Citigroup

engaged to build the emergency backup system.  The issues between Silverstein and Citigroup

are the same as the issues between Silverstein and the Citigroup Design and Construction

Defendants in this case.  That is, "the identical issue was necessarily decided in the prior action

and is decisive in the present action."  D'Arata v. New York Cent. Mut. Fire Ins. Co., 76 N.Y.2d

659, 664 (N.Y. 1990).

        Silverstein also "had a full and fair opportunity to contest the prior

determination."  Id.  As subrogee, IRI had all rights that Silverstein had, and thus it essentially

litigated the case as Silverstein, asserting all of Silverstein's claims and accepting the

responsibility to resist affirmative defenses against those claims.  See Seibert v. Dunn, 216 N.Y.

237, 245–46 (N.Y. 1915) ("The assignee, in suing the claim, stood in the place of the assignor,

succeeding to the benefits which it might bring, but chargeable to the extent of it with the

liabilities of the assignor.").  And, having paid Silverstein's claims, IRI had a strong interest in

the outcome of the case, ensuring that it would litigate the case with appropriate zeal.  Silverstein

has not alleged that the prior forum was unfair, or that the issue litigated therein did not receive an adequate hearing, or that the controlling law has changed in the interim.  See Moore's Fed. Practice 3d § 132.04(1)(a)(iii).  Thus there is no reason to permit relitigation of issues found against Silverstein in IRI.  See Buechel v. Bain, 97 N.Y.2d 295, 304 (N.Y. 2001) ("In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results.").

**IV.      The Third-Party Complaint Against Irwin Cantor and Syska**

Silverstein's third-party complaint alleges claims against two other contractors—Office of Irwin G. Cantor, P.C., and Syska & Hennessy, Inc.—which provided engineering services relating directly to the construction of the 7WTC tower.  Third-Party Complaint ¶¶ 12–13.  Silverstein asks for indemnification and contribution against them, and argues in opposition to their motion that his third-party action should be sustained because the end and aim of their work was to benefit the building directly.

Silverstein's third-party complaint is legally deficient because he fails to establish that a "substantial basis in law exists to believe that the performance, conduct or omission complained of  . . . was negligent and that such performance, conduct or omission was a proximate cause of [the] . . . property damage complained of."  N.Y. C.P.L.R. § 3211(h).  I held in Aegis that § 214-d states "an important policy of New York regarding the time and conditions for bringing suit," which federal courts should respect and follow.  2006 WL 62019 at *19–20.  Silverstein argues that § 3211(h) was not intended to apply to third-party complaints and alternatively, that the third-party complaint meets its requirements.  These arguments are without merit.

Section 3211(h) provides that it is applicable to an "action, claim, cross claim or counterclaim." Third-party complaints are not mentioned, and it is upon that omission that Silverstein spins an argument. But a third-party complaint is an "action" containing "claims," and N.Y. C.P.L.R. § 3011, in enumerating the kinds of pleadings that the C.P.L.R. governs, mentions third-party complaints as a "complaint ... against any other person not already a party ...." And section 214-d(5), in specifying the preconditions of time and notice that are required before suits can be brought against licensed architects and engineers, applies equally to third-party claims as to all others. Thus § 3211(h) applies to third-party claims.

Silverstein has not met the requirements of § 3211(h). His third-party complaint does not allege any basis for claiming that Irwin Cantor or Syska breached a duty owed to Silverstein. Silverstein's third-party complaints against Irwin Cantor and Syska are dismissed.

### Conclusion

For the foregoing reasons, the motions of the third-party OEM Design and Construction Defendants and Citigroup Design and Construction Defendants are granted, and the third-party complaints against them are dismissed with prejudice. The third-party complaints against Irwin Cantor and Syska are also dismissed, without prejudice.

SO ORDERED.

Date:      March 9, 2007
           New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

15